Bill Robins III (SBN 296101)
Stephen J. Kelly (SBN 275784)
Paloma Carrero (SBN 295177)
**ROBINS CLOUD LLP**
808 Wilshire Blvd., Suite 450
Santa Monica, California 90401
(310) 929-4200 Telephone
(310) 566-5900 Facsimile
robins@robinscloud.com
skelly@robinscloud.com
pcarrero@robinscloud.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHANA MARTINEZ,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>ELIZABETH L. ENDERTON, D.O.; FAMILY HEALTHCARE NETWORK; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; and KAWEAH DELTA HEALTH CARE DISTRICT,<br><br>　　　　Defendants. | CASE NO.:<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**(1)** Professional Negligence;<br>**(2)** Negligence—Vicarious Liability/Respondeat Superior;<br>**(3)** Negligent Hiring, Retention, and Supervision; and<br>**(4)** Negligence<br><br>**DEMAND FOR JURY TRIAL** |

　　　Plaintiff JOHANA MARTINEZ, by and through the undersigned counsel, hereby brings this Complaint for Damages against the above-named Defendants and alleges the following:

**I.　JURISDICTION**

　　　1.　This Court may exercise personal jurisdiction over all Defendants as all Defendants are residents or citizens of the State of California and/or have sufficient contacts with the State of California to afford a basis for the exercise of personal jurisdiction consistent with

1

the Constitution of the United States.

2. This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 233 (g)-(n) and 28 U.S.C. §§ 1346(b), 2671-2680. Pursuant to 42 U.S.C. § 233, Defendant FAMILY HEALTHCARE NETWORK and ELIZABETH L. ENDERTON D.O. were at all relevant times Deemed Public Health Service Employees of Defendant UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES. Thus, the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 2671-2680) is the exclusive remedy for injuries caused by Deemed Public Health Service Employees and Federal Agencies and provides a basis for jurisdiction over all claims made against Defendants ELIZABETH L. ENDERTON, D.O., FAMILY HEALTHCARE NETWORK, and UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES.

3. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as the claims alleged against Defendant KAWEAH DELTA HEALTH CARE DISTRICT are so related to the claims against Defendants ELIZABETH L. ENDERTON, D.O. and FAMILY HEALTHCARE NETWORK that they form part of the same case or controversy and allow the Court to exercise its supplemental jurisdiction over such claims.

## II.   PARTIES

4. Plaintiff JOHANA MARTINEZ (hereinafter "Plaintiff") is a resident of Tulare County, California and, at all relevant times was, a resident and citizen of the State of California.

5. Defendant FAMILY HEALTHCARE NETWORK (hereinafter "Defendant FHCN") is a nonprofit business entity operating under the laws of the State of California. Defendant FHCN is, and at all relevant times was, a federally supported health center pursuant to 42 U.S.C. § 233. Defendant FHCN may be served with summons in this matter at its principal place of business located at 305 E. Center Avenue in Visalia, California 93291.

6.	Defendant ELIZABETH L. ENDERTON, D.O. (hereinafter "Defendant ENDERTON") is a resident of Tulare County, California and at all relevant times was a resident and citizen of the State of California. Pursuant to 42 U.S.C. § 233, Defendant ENDERTON was at all relevant times an employee or agent of Defendant FHCN and was, thereby, an employee of Defendant UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES. Defendant ENDERTON may be served with summons in this matter at her regular place of business located at 401 E. School Avenue in Visalia, California 93291.

7.	Defendant UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES (hereinafter "DHHS" or "Defendant DHHS") is, and at all relevant times was, a Federal Agency which provided funding to Defendant FAMILY HEALTHCARE NETWORK. Defendant DHHS may be served with summons in this matter through the Office of the General Counsel, General Law Division located at 330 C Street, S.W., Switzer Building, Suite 2600 in Washington, D.C. 20201.

8.	Defendant KAWEAH DELTA HEALTH CARE DISTRICT (hereinafter "Defendant KDHCD") is a Special Health Care District under California state law duly organized and existing under the laws of the State of California with its principal place of business in the State of California. KAWEAH DELTA MEDICAL CENTER (hereinafter "KDMC") is, and at all relevant times was, a hospital operated, maintained, and/or controlled by Defendant KDHCD. Defendant KDHCD may be served with summons in this matter at its principal place of business located at 400 W. Mineral King Avenue in Visalia, California 93291.

9.	Defendants FHCN, ENDERTON, DHHS, and KDHCD are collectively referred to as "Defendants."

### III.	VENUE

10.	Pursuant to 28 U.S.C. § 1393(b)(2), venue is proper in this Court because a

3

substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred in this District.

### IV. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

11. In 2014, Plaintiff was diagnosed with menorrhagia and uterine fibroids. To address these issues, Plaintiff consulted with Defendant ENDERTON, an employee and/or agent of Defendant FHCN and a specialist in obstetrics and gynecology, about treatment options.

12. After examination, Defendant ENDERTON recommended to Plaintiff that a hysterectomy with a bilateral salpingectomy (removal of fallopian tubes) be performed to remove the growths and provide definitive management of any further fibrous growths. Defendant ENDERTON further recommended that the hysterectomy be performed with the assistance of the da Vinci Surgical System. The da Vinci Surgical System is comprised of a surgeon's console, which allows a surgeon to control, through hand movements, a number of robotic arms handling surgical instruments. Defendant ENDERTON explained to Plaintiff that a hysterectomy with assistance from the da Vinci Surgical System resulted in quicker recovery times, less invasive surgery, and less chance of infection. Based on Defendant ENDERTON's recommendation, Plaintiff consented to proceed with a robotic-assisted hysterectomy with a bilateral salpingectomy.

13. On December 15, 2014, Plaintiff underwent a robotic-assisted total laparoscopic hysterectomy with bilateral salpingectomy and cystoscopy which was performed by Defendant ENDERTON at KAWEAH DELTA MEDICAL CENTER ("KDMC"), a hospital operated, maintained, and/or controlled by Defendant KDHCD.

14. Upon information and belief, the da Vinci Surgical System used by Defendant ENDERTON in Plaintiff's procedure was at all relevant times owned, controlled, and/or maintained by Defendant KDHCD.

15. Following the surgery, Plaintiff was told by Defendant ENDERTON that the surgery was successful and did not report to Plaintiff any serious complications. Plaintiff then remained at KDMC for two (2) days and was discharged on December 17, 2014.

16. Defendant ENDERTON's progress notes dated December 17, 2014 indicated that Plaintiff had post-operative fever. Additionally, Plaintiff's discharge report dated December 17, 2014 indicated that Plaintiff had an elevated white blood cell count, elevated neutrophilic white blood cells, and elevated levels of white blood cells in her urine. This was all indicative of the fact that Plaintiff had a bacterial infection; nevertheless, Plaintiff was discharged by Defendant ENDERTON.

17. On December 23, 2014 at approximately 8:00 p.m., Plaintiff began to experience abdominal discomfort, vomiting, and vaginal bleeding and entered the KDMC emergency room. Initial radiological studies determined that Plaintiff was experiencing a dilated small bowel with postoperative ileus and free fluid in her abdomen adjacent to her liver and spleen.

18. On December 24, 2014 at approximately 12:00 a.m., Plaintiff was examined and then admitted for observation to the KDMC Intensive Care Unit. During Plaintiff's admission from December 24, 2014 to January 8, 2015, Plaintiff suffered from severe abdominal discomfort, vomiting, and vaginal bleeding.

19. On December 24, 2014, Plaintiff was given percutaneous abscess drainage. Additionally, a pigtail catheter drain was placed in Plaintiff's abdomen.

20. On December 26, 2014, Plaintiff was diagnosed with an abdominal abscess likely due to a bowel perforation.

21. On December 30, 2014, after Plaintiff's physicians noted that Plaintiff's condition was worsening and had begun to suffer from intra-abdominal sepsis, Plaintiff was placed on

5

TPN, or total parental nutrition. Additionally, a catheter was placed in Plaintiff's chest to provide for Plaintiff's nutritional requirements.

22. On January 2, 2015, after Plaintiff's condition had failed to significantly improve, Plaintiff was placed on an NG tube and a second pigtail drain was placed in the ventral aspects of Plaintiff's peritoneal cavity.

23. On January 7, 2015, a tunneled Hickman catheter was placed in Plaintiff's right internal jugular vein to administer medication related to Plaintiff's ongoing sepsis.

24. On January 9, 2015, Plaintiff was discharged from the Intensive Care Unit with her intraperitoneal drains in place and told to follow up with her primary care physicians within three (3) to five (5) days. During her admission, Plaintiff was told by Defendant ENDERTON that Plaintiff may have originally been injured from a surgical complication during the December 15, 2014 robotic assisted hysterectomy, performed by Defendant ENDERTON. Defendant ENDERTON did not disclose that any professional medical negligence may have caused, contributed to, or otherwise aggravated Plaintiff's injuries.

25. On January 15, 2015, Plaintiff re-entered the emergency room at the KDMC with increased abdominal and back pain. Plaintiff also noted that blood had begun to exit through the drainage tubes that were placed during her previous admission. Plaintiff was then admitted to the KDMC's Intensive Care Unit on January 16, 2015. During Plaintiff's admission at KDMC from January 16, 2015 to January 26, 2015, Plaintiff complained of severe abdominal discomfort, vomiting, and nausea.

26. On January 16, 2015, a new pigtail drainage catheter was placed into the left upper quadrant of Plaintiff's abdomen to drain a developing abscess.

6

27. On January 23, 2015, one of Plaintiff's placed catheters was removed and a new drainage catheter was placed in the subcutaneous area of Plaintiff's abdomen because of a suspected development of a hematoma.

28. On January 24, 2015, because of severe pain, Plaintiff's umbilicus was opened and drained of bilious materials.

29. On January 26, 2015, Plaintiff was discharged and told to follow up with her primary care physician within one (1) to two (2) weeks.

30. Thereafter, on February 8, 2015, Plaintiff entered the emergency room at UC San Francisco Medical Center in San Francisco, California complaining of nausea, increased pain, breathing issues, and intermittent coughing. Plaintiff was immediately admitted to the UCSF Intensive Care Unit and placed on broad spectrum antibiotics.

31. On February 10, 2015, one of Plaintiff's abdominal drains was re-positioned because of an accumulation of material on Plaintiff's abdominal wall.

32. On February 12, 2015, Plaintiff underwent surgical incision and drainage of her developed abdominal abscesses.

33. On February 13, 2015, all of Plaintiff's drainage catheters were removed. Plaintiff was then taken off of TPN and advanced to a regular diet.

34. As a result of the acts and/or omissions stated above, Plaintiff suffered severe injuries, including a thermal burn to her bowel as well as associated injuries to her abdomen, pelvis, and gastrointestinal areas.

35. Based on the information available to Plaintiff, Plaintiff had no reason to suspect that any professional negligence of a medical provider had occurred, caused, or contributed to Plaintiff's injuries until after the failure of her severe symptoms to subside and her discharge from the UC San Francisco Medical Center. Despite reasonable diligence, Plaintiff was unable to

discover the nature and/or cause of her injuries until after the failure of her severe symptoms to subside and her discharge from the UC San Francisco Medical Center.

36. On January 8, 2016, after forwarding a California *Code of Civil Procedure* section 364 notice of intent to sue to Defendants ENDERTON and FHCN, Plaintiff received correspondence from DHHS indicating that such claims were pre-empted by the Federal Tort Claims Act and that the Federal Tort Claims Act was the exclusive remedy for injuries allegedly caused by a federally supported health care center.

37. On March 4, 2016, Plaintiff forwarded a SF-95 Administrative Tort Claim to Defendant DHHS in relation to the claims alleged above.

38. On August 8, 2016, Defendant DHHS denied Plaintiff's Administrative Tort Claim pursuant to 28 U.S.C. § 2401(b).

39. On September 13, 2016, the California Superior Court for the County of Tulare granted Plaintiff's application for leave to file a late claim as against Defendant KDHCD pursuant to California *Code of Civil Procedure* section 946.6(d).

V. **CLAIMS FOR RELIEF**

**COUNT 1**

**Professional Negligence**

**As Against Defendants ELIZABETH ENDERTON, D.O. and UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**

40. Plaintiff repeats and re-alleges all previous paragraphs as if fully set forth herein.

41. Defendant ENDERTON, at all times mentioned herein, held herself out as a medical professional. Defendant ENDERTON further held herself out as possessing the degree of medical and other health care provider education, skill, knowledge, and experience as other health care providers practicing in the community. As such, Defendant ENDERTON owed

Plaintiff a duty of care to exercise the degree of skill, knowledge, and care in the diagnosis and treatment of Plaintiff that other reasonably careful practitioners in the medical community would use in the same or similar circumstances.

42. Defendant ENDERTON failed to exercise that standard of care and skill ordinarily and reasonably required of physicians and other health care providers in the relevant medical community in relation to the treatment of Plaintiff by, among other acts and/or omissions:

    a. Failing to adequately diagnose Plaintiff;

    b. Failing to provide adequate treatment to Plaintiff;

    c. Failing to adequately supervise Plaintiff's medical condition; and/or

    d. Failing to adequately provide the medical care required under the same or similar circumstances to Plaintiff.

43. Each of these acts and/or omissions affirmatively contributed and caused the Plaintiff's injuries and resulting damages.

## COUNT 2

### Negligence—Vicarious Liability/Respondeat Superior

**As Against Defendants FAMILY HEALTHCARE NETWORK and UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**

44. Plaintiff repeats and re-alleges all previous paragraphs as if fully set forth herein.

45. At all relevant times, Defendant ENDERTON was an agent and/or employee of Defendants DHHS and FHCN and was acting within the course and scope of such agency and/or employment and/or with the knowledge, authority, ratification, and consent of Defendants DHHS and FHCN. As such, Defendants DHHS and FHCN are vicariously liable under the

doctrines of vicarious liability and/or respondeat superior for the negligence of Defendant ENDERTON.

46. Defendant ENDERTON failed to exercise that standard of care and skill ordinarily and reasonably required of physicians and other health care providers in the relevant medical community in relation to the treatment of Plaintiff by, among other acts and/or omissions:

    a. Failing to adequately diagnose Plaintiff;

    b. Failing to provide adequate treatment to Plaintiff;

    c. Failing to adequately supervise Plaintiff's medical condition; and/or

    d. Failing to adequately provide the medical care required under the same or similar circumstances to Plaintiff.

47. Each of these acts and/or omissions affirmatively contributed and caused the Plaintiff's injuries and resulting damages.

## COUNT 3

### Negligent Hiring, Retention, and Supervision

**As Against Defendants FAMILY HEALTHCARE NETWORK and UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**

48. Plaintiff repeats and re-alleges all previous paragraphs as if fully set forth herein.

49. Defendant ENDERTON at all relevant times was an employee or agent of Defendant FHCN. At all relevant times, Defendant FHCN and its employees were deemed federal employees as that terms is defined in 42 U.S.C. § 233 (g)-(n) and 28 U.S.C. §§ 1346(b), 2671-2680

50. Defendant ENDERTON was or became unfit and/or incompetent to perform the work for which she was hired.

51. Defendants DHHS and FHCN knew or should have known that Defendant ENDERTON was or became unfit and/or incompetent and that this unfitness and/or incompetence created a particular risk to others like Plaintiff.

52. Defendant ENDERTON's unfitness and/or incompetence harmed Plaintiff.

53. Defendants DHHS and FHCN's negligence in hiring, supervising, and/or retaining Defendant ENDERTON was a substantial factor in causing Plaintiff's harm.

54. Each of these acts and/or omissions affirmatively contributed and caused the Plaintiff's injuries and resulting damages.

## COUNT 4

## Negligence

**As Against Defendant KAWEAH DELTA HEALTH CARE DISTRICT**

55. Plaintiff repeats and re-alleges all previous paragraphs as if fully set forth herein.

56. Defendant KDHCD, and its agents and/or employees, at all times mentioned herein, held themselves out as medical professionals, physicians, surgeons, nurses, administrators, and/or other health care providers. Defendant KDHCD further held itself out as possessing the degree of medical, nursing, administrative, and/or other health care provider education, skill, knowledge, and experience as other health care providers providing care and treatment in the community. As such, Defendant KDHCD owed Plaintiff a duty of care to exercise the degree of skill, knowledge, and care in the diagnosis and treatment that other reasonably careful healthcare facilities and/or hospitals in the relevant medical community would use in the same or similar circumstances.

57. Defendant KDHCD, and its agents and/or employees, failed to exercise that standard of care and skill ordinarily and reasonably required of physicians, surgeons, hospitals,

nurses, and other health care providers and/or healthcare facilities in the relevant medical community in relation to the treatment of Plaintiff by, among other acts and/or omissions:

    a.    Failing to adequately diagnose Plaintiff;

    b.    Failing to provide adequate treatment to Plaintiff;

    c.    Failing to adequately supervise Plaintiff's medical condition; and/or

    d.    Failing to adequately provide the medical and/or hospital care required under the same or similar circumstances to Plaintiff.

58. Defendant KDHCD also owed Plaintiff a duty to exercise reasonable care in providing procedures, policies, facilities, supplies, equipment, and qualified personnel reasonably necessary for the treatment of patients like Plaintiff. Additionally, Defendant KDHCD owed Plaintiff a duty to maintain their premises and instrumentalities with such care and diligence as would reasonably assure their safety.

59. Defendant KDHCD, and its agents and/or employees, failed to exercise reasonable care in maintaining their premises and instrumentalities by, among other acts and/or omissions:

    a.    Failing to adequately maintain the da Vinci Surgical System used by Defendant ENDERTON in Plaintiff's procedure;

    b.    Failing to adequately inspect the da Vinci Surgical System used by Defendant ENDERTON in Plaintiff's procedure;

    c.    Failing to adequately repair the da Vinci Surgical System used by Defendant ENDERTON in Plaintiff's procedure;

    d.    Failing to ensure that the da Vinci Surgical System used by Defendant ENDERTON in Plaintiff's procedure was in a safe condition for use;

  e. Failing to ensure that Defendant ENDERTON was adequately trained and/or otherwise competent to utilize the da Vinci Surgical System;

  f. Failing to take proper precautions regarding the da Vinci Surgical System in order to minimize or eliminate the risk of harm to Plaintiff; and/or

  g. Otherwise acting without the reasonable care required under the circumstances.

60. Each of these acts and/or omissions affirmatively contributed and caused the Plaintiff's injuries and resulting damages.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment and damages against Defendants and each of them, as follows:

1. Compensatory damages for the described losses;
2. Past and future medical expenses;
3. Past and future lost wages and loss of earning capacity;
4. Past and future emotional distress and pain and suffering;
5. Past and future disfigurement and impairment;
6. Consequential damages;
7. Costs of this action;
8. Pre-judgment and all other interest recoverable; and
9. Such other additional and further relief as Plaintiff may be entitled to in law or in equity.

///

///

///

## VII. DEMAND FOR JURY TRIAL

Plaintiff respectfully demands that the present matter be set for a jury trial.

Dated: October 13, 2016          ROBINS CLOUD LLP


By:  /s/   Stephen J. Kelly
 Bill Robins III
 Stephen Kelly
 Paloma Carrero

 Attorneys for Plaintiff